Barbour, C.J.
(dissenting). __ The obligations and liabilities of common carriers of goods differ essentially from those of carriers of passengers; for, while the former are bound to carry the property safely to its place of destination, unless prevented from so doing by some act of God or of a public enemy, and, to that extent, may therefore be said to be insurers of the goods, the latter are liable, in actions of this character, only for such injuries to the persons transported by them as are occasioned by their doing, or omitting to do, some act which careful, prudent men, of good judgment and competent skill in that business, and having a due regard for the safety of the persons of others, would' not have done or omitted; nor even then, unless such injpry is wholly caused by the negligence of the carriers, or that of their' servant. If the carelessness of the passenger contribute to the accident which occasions the injury, his carrier is thereby exonerated from liability.- The reason for the distinction between these two classes of common carriers is found in the fact that, in the one case, the property carried is wholly within the care and custody and under the- exclusive control of the carrier for the time *503 being; while,in the other, the passenger retains the management and control of his own person, upon or within the vehicle in which he is transported, and is therefore bound to exercise such caution and care for his own protection as a prudent, sensible man would exhibit in the same position.
Negligence,per se, cannot properly be imputed to a passenger upon a street-railroad liorse-car, merely because he is riding upon one or the other, of the platforms, nor to the railroad proprietors for carrying him there; although, there can be no doubt, it would be safer for the passenger within the body of the car. There are degrees of danger, as of negligence; all are comparative. bio place between the cradle and the grave is wholly safe from accidents. One who is within a street-car is less exposed to danger than another who stands upon the platform; while a man in 1ns own house may be safer than either. It may probably be assumed, too, that a passenger upon a ship or steamer at sea, or on a train of cars propelled by a locomotive engine at the rate of thirty or fifty miles an horn*, is in greater danger than is a passenger upon even the front platform of a street-railroad car. But it would be contrary to reason to say that the occupying of a seat in a locomotive train, or a berth in a ship, or a standing place upon the front platform of a street car, is of itself, and unqualified by other circumstances, such an act of negligence on the part of a passenger as will exonerate the candor from liability for an injury caused by his own negligence. Indeed, the fact, which is within the knowledge of all of us, that many thousands of our most careful,-prudent, and sensible men do thus travel daily and repeatedly, is conclusive evidence to the contrary.
Assuming, then, as we may, that the standing of a passenger upon the platform of a street car is not, on his part, negligence per se, it is, at least, equally as clear that the carrier is not guilty of negligence merely because he permits such passenger to stand there. That which is negligence in the one must be negligence in the other; provided both have the same knowledge in regard to the danger.
But it is a matter of. common knowledge and common-sense, *504 and must, therefore, be considered as an established fact in this case, that it is more dangerous to stand upon the crowded front platform of a street cpr than to occupy a place .within it; and that fact, it appears to me, all passengers are bound to understand. In this case, certainly, the person injured must have been aware of the extra danger, for he had been in the habit of travel-ling upon such cars for many years. He therefore voluntarily took his place upon the platform with full knowledge of the hazard he incurred, and thereby assumed to himself the risk consequent upon his own negligence in so doing, whatever it may have been.
The condition of such a passenger is totally unlike that 'of one upon a locomotive train in motion, who cannot leave the same because of the extreme danger, and is forced to take the platform as the safest proper place left to him, because there is no room for him within the cars; for a person desiring to take passage upon an approaching street car can see at a glance whether it is or is not so full as to prevent his riding inside; and if he does not choose to look, his ignorance will be that kind of orassa ignorwntia which excuses no man. Or, if he has misjudged, and finds, when upon the platform, that the interior is full, he may require the conductor to stop the car, and alight therefrom.
For these reasons, it appears to me, the defendants were not bound to extend to the passenger the same protection upon the platform as if he was within the car, even though his fare was paid, nor any protection, indeed, beyond that which pertained to the position such passenger had himself voluntarily selected or taken ; and it follows, in my opinion, that the submission to the jury of the question whether the payment of such fare did not entitle the platform passenger to the samp protection that was given, to' inside'passengers, was erroneous, and probably tended to the injury of the defendants. Indeed, I cannot perceive why the payment of the fare changed the relative rights of the parties to apy extent. We all know that persons desiring passage upon cars of this description step on to them whenever they please, and thus *505 become passengei's, and entitled to protection as such, whether the conductor has yet collected his fare or not. If that were otherwise, carriers might relieve themselves from liability for a portion of the journey by abstaining from collecting the fare. Because of that misdirection, and without passing upon any further questions, I am of opinion that the judgment should be set aside, with costs, and a new trial ordered.